AO 91 (Rev. 5/85) Criminal Complaint
Case 1:07-cr-00074-LJO   Document 1   Filed 03/20/07   Page 1 of 6

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

FILED MAR 2 0 2007
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK

**CRIMINAL COMPLAINT**

UNITED STATES OF AMERICA

v.

Arturo Cervantes
Manuel Meza
Jarvis Phelps

CASE NUMBER: 1: 07 MJ 00058 DLB

(If search warrant is issued regarding this complaint, indicate above the case number assigned.)

I, Christopher Coleman, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Between March 9, 2007 through and including March 9, 2007 in Fresno County(ies), in the Eastern District of California, and elsewhere,

    The defendants did knowingly and intentionally
    Conspire to distribute fifty grams or more of cocaine base/crack

in violation of Title 21, United States Code, Section(s) 841(a)(1) and 846, with a maximum penalty of 10 years to life imprisonment, 4 million dollar fine, and $100 penalty assessment.

I further state that I am a(n) DEA Special Agent and that this complaint is based on the following facts: *(Official Title)*

See Attachment A.

Continued on the attached sheet and made a part hereof: X Yes ___ No

*Signature of Complainant*
**Christopher Coleman**

Sworn to before me and subscribed in my presence,

March 20, 2007           at      Fresno, California
*(Date)*                         *(City and State)*

**Honorable Dennis L. Beck**
*(Name & Title of Judicial Officer)*    *(Signature of Judicial Officer)*

# AFFIDAVIT

I, Christopher Coleman, being duly sworn, do hereby depose and state:

1. I am a Special Agent (S/A) for the Drug Enforcement Administration (DEA), and have been so employed by the DEA since February 2004. During this time, I have completed a sixteen week training Academy at Quantico, Virginia. This training included the investigation of violations of Title 21, United States Code, Sections 841(a)(1) and 846. I also have twelve years of previous law enforcement experience as a Chicago, Il. Police Officer. Based on my experience and the training I have acquired from drug enforcement school and from working with other Special Agents and Detectives, I am providing the following facts.

2. This affidavit is made to support a complaint charging Jarvis Phelps, Arturo Cervantes, and Manuel Meza with Conspiracy to Distribute Cocaine Base/Crack within the Eastern District of California, in violation of Title 21 United States Code, Sections 841(a)(1) and 846.

3. The facts which establish probable cause for the arrest of Jarvis Phelps, Arturo Cervantes, and Manuel Meza are either personally known to me or have been told to me directly by other Federal, State or Local law enforcement officers.

4. On March 9, 2007, at approximately 2:48pm, during an investigation by the Fresno Police Dapartment Major Narcotics Unit and the Drug Enforcement Administration, an undercover Fresno Police officer, here after referred to as UC, placed a telephone call to (559) 495-8425. This call was answered by a subject now known as Jarvis Phelps. The UC spoke with Phelps and asked Phelps if he could "get one" today. The UC explained to me that the term "get one", meant that the UC was asking Phelps if the UC could purchase one ounce of crack cocaine. Phelps told the UC that he did not have it, and that the UC would have to wait with Phelps for someone to bring it. Phelps further told the UC to bring the money, and that once he saw the money, then they would bring the drugs. The UC asked Phelps how much it would cost, and Phelps told the UC that it would cost $560.00. The UC agreed to the price and told Phelps that he would call Phelps back. This

1

1  conversation was recorded by the UC.

2  5.  At approximately 3:05pm, the UC placed another call to Phelps at the same number, and the UC told Phelps that the UC was on the way, and asked to meet Phelps at the Two-Way fruit stand at the intersection of Thorne and California. Phelps asked that the UC come to Phelps' residence. At that time, the UC asked Phelps to call the UC back once the dope had arrived at Phelps' house.

6.  At approximately 3:20pm, Phelps called the UC back. The UC verified that Phelps was calling the UC back utilizing the same phone as he had used earlier through the UC's caller ID feature on the UC's phone. At that time, Phelps told the UC that the "guy" was there, and asked the UC to come to Phelps' house. The UC told Phelps that the UC did not want to meet at Phelps' house, and Phelps then instructed the UC to go to the Sunset Market, located at the corner of California and Teilman, and to meet Phelps there. The UC agreed and the call was terminated. The UC then proceeded to the Sunset Market and waited for Phelps' arrival.

7.  At that same time, surveillance officers watching Phelp's residence, 834 W. Valencia, Fresno, observed a 1995 Nissan Pathfinder bearing California registration 5WVM184 arrive at the front of that residence. They saw a black male adult, later identified as Phelps, leave the residence on foot and meet the vehicle in the street. Phelps approached the driver's side of the vehicle, and a hand to hand exchange took place. The vehicle, occupied by two Hispanic male adults, then drove away south bound from the area.

8.  After meeting with the Pathfinder, surveillance units observed Phelps enter a Chevrolet Camaro which was parked in front of the residence, and drive in that vehicle to the Sunset Market at California and Teilman streets. The UC was waiting in a vehicle when Phelps arrived. Upon observing Phelps, the UC exited the UC vehicle and approached Phelps' vehicle. The UC entered the passenger side of Phelps' vehicle and sat in the vehicle with Phelps. The UC then produced a small electronic scale and placed that scale on the center console of the vehicle, and asked Phelps to place the drugs on the scale. Phelps complied and placed four small white rock-like substances wrapped in clear plastic on the scale.

2

The substance weighed a total of 27.9 grams on the scale. The UC told Phelps that it looked good, and the UC then gave Phelps $560.00 United States Currency. Phelps took the money, counted it, agreed that it was good and then told the UC to call Phelps if the UC needed any more. The UC agreed and then left Phelps' vehicle and returned to the UC's vehicle. A field test was performed on the substance that the UC purchased from Phelps and it resulted in a positive indication for the presence of cocaine.

9. At the conclusion of the meeting between the UC and Phelps, surveillance units observed Phelps drive in his vehicle back to 834 W. Valencia, park his vehicle, and enter the residence.

10. Surveillance was maintained on the Nissan Pathfinder when it was driven away from the meeting with Phelps. The vehicle was driven directly to 4614 E. Dwight, Fresno where its occupants exited the vehicle and entered the residence. At that time, a second vehicle, a 1997 Chevrolet Suburban, , bearing California registration 5EHW53,. was parked in the driveway at 4614 E. Dwight. That vehicle had been observed by surveillance officers during a prior drug transaction involving Phelps.

11. On March 19, 2007, at approximately 12:15 pm, the UC placed a call to the same cellular telephone utilized by Phelps. At that time, the UC asked Phelps if he could get "two and two". The UC explained to me afterwards that "two and two", meant that the UC was requesting to purchase a total of four ounces of crack cocaine from Phelps. Phelps replied that he would ask "her", and instructed the UC to call Phelps back.

12. At approximately 12:38pm, the UC called Phelps back and Phelps told the UC that "she" was bringing over 1 ½ now, but that the rest of it wasn't ready yet. The UC told me afterwards that Phelps was stating that his source of supply was bringing him 1 ½ ounces of crack cocaine, but that the source was making more, and that if the UC wanted more, that he would have to wait. The UC agreed to purchase 1 ½ ounces of crack from Phelps at a price of $570.00 per ounce. Phelps told the UC that Phelps would call the UC back once "it" had arrived, and that Phelps would meet the UC at the Sunset Market, at California and Teilman in Fresno, where they had done the previous deal.

13. Prior to these telephone conversations, surveillance had been established at 4614 E. Dwight, Fresno, CA. Parked at that residence was a 1995 Nissan Pathfinder bearing California registration 5WVM184. which was used to deliver crack cocaine to Phelps on March 9, 2007. At approximately 1:00pm (on March 19) two Hispanic male adults left at 4614 E. Dwight, entered the Pathfinder, and drove directly to 834 W. Valencia arriving at approximately 1:15pm. At that time, Phelps exited his residence, approached the drivers side and completed a hand to hand exchange with the driver of the vehicle.

14. After this meeting, the Pathfinder with the two Hispanic male adults drove away from the residence to the area of Fresno and Kearney streets. At that location, a Fresno Police marked vehicle stopped the Pathfinder and detained the occupants. The driver of the vehicle was subsequently identified as Arturo Cervantes, and the passenger was identified as Manuel Meza.

15. At the same time that the Pathfinder was stopped, Phelps rode a bicycle from his residence to the Sunset Market at California and Teilman, where he met the UC and delivered approximately 1 ½ ounces of crack cocaine to the UC. The UC gave a pre-determined arrest signal and members of the Fresno Police Major Narcotics unit arrested Phelps. A custodial search of Phelps revealed approximately ½ ounce of crack cocaine and a small amount of suspect marijuana.

16. Following the arrest of Phelps, Cervantes and Meza, a federal search warrant was executed at 4614 E. Dwight. That residence was occupied by Juana Antunez. Seized during the search of that residence was an unknown amount of United States Currency estimated to be several thousand dollars, approximately $2000.00 United States Currency from the wallet of Antunez, and approximately 14 grams of crystal methamphetamine on the dresser in the bedroom of Antunez. Antunez made post Miranda statements indicating that she had accompanied Cervantes on prior narcotics transactions.

17. Arturo Cervantes, who had driven the Pathfinder, made a post Miranda statement indicating he and Meza had delivered crack cocaine to Phelps on March 19. Cervantes also indicated that he, Antunez, and Meza shared the Dwight Way residence and that any illegal

4

1  substances there belonged to him as opposed to the other residents.

2  18.  Based upon the forgoing, I believe that there is probable cause to believe that Jarvis Phelps, Arturo Cervantes, Manuel Meza and Juana Antunez willingly and knowingly conspired to Possess with the Intent to Distribute Cocaine Base/Crack, in violation of Title 21 United States Code, Sections 841(a)(1) and 846.

Christopher Coleman, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 20th DAY OF
March, 2007

DENNIS L. BECK
United States Magistrate Judge